

**SO ORDERED.**

**SIGNED this 21 day of August, 2020.**

_____
**David M. Warren
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                                          CASE NO. 20-00369-5-DMW

**TRISTIN RAE VALDIVIA**

                                                                                 **CHAPTER 7**

                      **DEBTOR**

## ORDER DISMISSING CASE

This matter comes on to be heard upon the Motion to Dismiss Chapter 7 Proceeding Pursuant to 11 U.S.C. § 707(b)(1) filed by the United States Bankruptcy Administrator ("BA") on April 15, 2020 and the Debtor's Response to Motion to Dismiss filed by Tristin Rae Valdivia ("Debtor") on May 11, 2020. Both parties also filed memoranda in support of their positions and filed a Joint Stipulation of Facts ("Joint Stipulation") on June 23, 2020. The court conducted a hearing in Raleigh, North Carolina on June 24, 2020. Brian C. Behr, Esq. appeared for the BA, and Travis Sasser, Esq. appeared for the Debtor. Based upon the pleadings, the testimony of the Debtor and her spouse and other evidence presented, the arguments of counsel and the case record, the court makes the following findings of fact and conclusions of law:

Background

1.      The Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on January 28, 2020.

2.      The Debtor and the BA have stipulated to the following facts:

   a.   The Debtor has total unsecured debt in the amount of $370,574.97. That amount includes student loan obligations totaling approximately $320,000.00. Of that amount, the principal amount of $26,966.00, not including unpaid interest, is related to "parent PLUS" loans the Debtor incurred to pay for her daughter's education. The balance of approximately $289,000.00, including unpaid interest, is related to the Debtor's own educational loans.[1] The Debtor also owes $7,464.00 in unpaid nursing school tuition. The Debtor listed no secured debts on her Schedules. At least 50% of the Debtor's total debt is attributable to direct educational costs such as tuition and books;

   b.   The Debtor's Schedule I reflects she is employed as a nurse practitioner with Duke University Health System. Her gross monthly income is $8,894.82, and after certain payroll deductions her net income is $6,721.59. Schedule I also reflects the Debtor's spouse is employed as a registered nurse with Duke Regional Hospital. His gross monthly income is $6,500.00, and after certain payroll deductions his net income is $4,766.67. According to Schedule I, together the Debtor and her spouse gross $15,394.82 monthly, and after deducting payroll deductions they have monthly net income of $11,488.26;

---

[1] The stipulations stated in this paragraph are based on the Joint Stipulation, with the exception of the information regarding the Debtor's student loan obligations. The parties stipulated that "The Debtor's Schedules reflect she has total unsecured debt in the amount of $370,574.97, $320,304.05 of which are student loans . . . ." The total loan figure of $320,304.05 contained in the Joint Stipulation is based on an exhibit presented at the hearing with a date of June 23, 2020. Another exhibit presented at the hearing, with a date of March 20, 2020, indicates the Debtor's student loan obligations total $320,646.08. Both exhibits also indicate that of the total loan obligation, the principal amount of $26,966.00 relates to student loans incurred for the education of the Debtor's daughter.

2

  c. The Debtor's Schedule J reflects that she has a household size of three and monthly expenses of $11,487.47. Taken together with their monthly income from Schedule I, the Debtor and her spouse have monthly net income of $0.79. The Debtor's largest Schedule J expense is $3,561.68 relating to student loan payments; and

  d. The Debtor last made a payment on her student loans in 2014. Since 2014, the student loan obligations have been in a period of deferment or forbearance, initially as a result of the Debtor's enrollment in graduate school and more recently as a result of the CARES Act[2] which will continue forbearance through September 30, 2020.

 3. The Debtor testified at the hearing about her employment and education history. The Debtor and her spouse married in 2000 and previously lived on Long Island in New York. The Debtor testified that she worked at a jewelry store, and her spouse was a nursing assistant at a hospital. The Debtor and her spouse were living "paycheck to paycheck," and both decided to enroll in educational programs to enhance their employment opportunities. The Debtor's spouse went to nursing school, and the Debtor received an associate degree in respiratory care from Nassau Community College in Garden City, New York in May 2000. She began her first job as a respiratory therapist in July 2001 and worked in that position for three years before the couple and their children moved to North Carolina. The Debtor testified that her spouse was recruited for a position at Duke University Medical Center, and the couple determined that North Carolina would offer a lower cost of living than New York.

 4. Upon moving to North Carolina, the Debtor worked for a short time at Rex Hospital as a respiratory therapist educator. The Debtor began working as a respiratory therapist at Duke University Medical Center in April 2005 and maintained that position until August or September

---

[2] The Coronavirus Aid, Relief, and Economic Security Act, commonly known as the CARES Act, was enacted on March 27, 2020. *See* Pub. L. No. 116-136, § 3513, 134 Stat. 281 (2020).

2010.  The Debtor testified that she enjoyed working as a respiratory therapist, but when she was approximately 38 years old, she decided to "start on the journey" to become a nurse practitioner in order to increase her income potential.  The Debtor testified that she and her spouse "were tired of . . . living paycheck to paycheck" and wanted to make more money and "have a better life" for their family.  She also contemplated obtaining a degree as a certified registered nurse anesthetist, but she was not accepted into the program at Duke University.  The Debtor testified that certified registered nurse anesthetists generally make more money than nurse practitioners.

5.  The Debtor obtained an associate degree in nursing in May 2010.  Duke University provided tuition reimbursement assistance to the Debtor, and the Debtor did not incur any student loan debt to obtain that degree.  After obtaining the associate degree in nursing, the Debtor was able to work as a registered nurse while she obtained a Bachelor of Science degree in nursing from East Carolina University.  In order to pay for her education at East Carolina University, the Debtor incurred the first of the various student loan obligations that she now owes.  The Debtor testified that she never enjoyed working as a registered nurse but continued enrolling in the educational requirements to become a nurse practitioner.

6.  The Debtor obtained her Bachelor of Science degree in nursing from East Carolina University in December 2013 and began a nurse practitioner degree program at Duke University in January 2015.  The Debtor desired to become an acute care nurse practitioner, and she testified that to her knowledge, Duke University offered the only acute care nurse practitioner program in North Carolina at the time.  The Debtor worked full-time while also meeting her clinical hour requirements, and she obtained a Master of Science as an acute care nurse practitioner in August 2017.  The Debtor discovered after her enrollment at Duke University that as an acute care nurse practitioner, she would be limited to caring for patients at least thirteen years of age.  The Debtor

4

enrolled in additional classes after obtaining the acute care nurse practitioner degree, in order to obtain a Master of Science degree as a family nurse practitioner to expand the scope of patients for which she can care. The Debtor testified that she wanted the ability to see patients of all ages to make herself more marketable and allow herself more job opportunities. She did not attempt to find employment as an acute care nurse practitioner before enrolling in the classes for the family nurse practitioner degree. In order to have enough class hours to qualify for student loans during that period, the Debtor also took classes to obtain a nurse practitioner certificate of orthopedic specialization. The Debtor testified that she missed many of her children's school activities during the years that she was working full-time while taking classes to obtain additional degrees.

7. The Debtor has worked as a nurse practitioner at Duke Regional Hospital since October 2018. She also worked as a nurse practitioner at OrthoNC Urgent Care from May 2019 until March 2020, when her job was abated due to the coronavirus pandemic. The Debtor testified that she was able to increase her income by working at OrthoNC due to her additional degree as a family nurse practitioner. The Debtor's income has increased by approximately $40,000.00 annually since the time when she worked as a registered nurse.

The Issue Before the Court

8. Pursuant to 11 U.S.C. § 707(b)(1), the court

> may dismiss a case filed by an individual debtor under . . . chapter [7] whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of . . . chapter [7].

11 U.S.C. § 707(b)(1). Section 707(b)(2) dictates that the court shall presume that abuse exists if the amount of disposable income a Chapter 7 debtor hypothetically could contribute to a plan of reorganization rises above a certain threshold. *See* 11 U.S.C. § 707(b)(2). Section 707(b)(2)

employs a formulaic method, often called the "means test," to determine a Chapter 7 debtor's disposable income.

9. On Official Form 122A-1Supp: Statement of Exemption from Presumption of Abuse Under § 707(b)(2) filed with the Debtor's petition, the Debtor declared that her debts are not primarily consumer in nature, because the Debtor asserts that her student loans are non-consumer debts. The Debtor has asserted that pursuant to § 707(b)(1) and its reference to debtors whose debts are primarily consumer debts, the means test of § 707(b)(2) and the related presumption of abuse do not apply to her. The BA asserts that the Debtor's debt is primarily consumer in nature.

10. The Debtor has stipulated that if she were required to complete Official Form 122A-1: Chapter 7 Statement of Your Current Monthly Income, the Debtor's current monthly income calculation would be $18,488.40, with an annual income calculation of $221,860.80. The applicable median family income for the Debtor, a resident of Wake County, North Carolina with a household size of three, is $67,931.00. As a result, the Debtor's current monthly income would not fall within the "safe harbor" provisions of 11 U.S.C. § 707(b)(7).

11. The pay stubs provided by the Debtor and her spouse to the BA reflect that during the period from January 2020 through May 2020, after the means testing period, they had average gross monthly income of $16,995.20. The Debtor has stipulated that if she were required to complete the Official Form 122A-2: Chapter 7 Means Test Calculation, the presumption of abuse would arise.

12. The issue before the court is whether the Debtor's student loan debts are properly characterized as non-consumer debts.

Jurisdiction

13. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) which the court has the authority to hear and determine pursuant to 28 U.S.C. § 157(b)(1).

14. The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

Discussion

*Burden of Proof*

15. The BA asserts that although the BA bears the burden of proof to establish grounds for dismissal under § 707(b)(1), the Debtor should have the burden to establish that her debts are not primarily consumer debts. The BA cites *In re Ferreira*, 549 B.R. 232, 237 (Bankr. E.D. Cal. 2016) ("The debtor . . . bears the burden of demonstrating a profit motive in order to establish that a debt is nonconsumer or a business debt."). The BA also cites *Palmer v. Laying*, 559 B.R. 746 (D. Colo. 2016). In that case, the United States District Court for the District of Colorado, reviewing the bankruptcy court's dismissal of the debtors' case, examined the applicable burden of proof.

> In applying the profit motive test, the Bankruptcy Court required that [the debtor] demonstrate that the student loan debt was primarily incurred for a profit motive. This seems the correct way to proceed, given that it is the party incurring the debt who will, at least initially, be in the best position to explain why he or she incurred that debt. However, at most, the debtor's burden in this regard is one of persuasion. It still remains the UST's burden to show that the debtor's chapter 7 case should be dismissed, which, means that it remains the UST's burden to show that the debtor's debts are primarily consumer debts.

559 B.R. at 756 (internal citation omitted).

16. The Debtor, citing *In re Belly*, No. 11-02807-8-SWH, DE 32 (Oct. 25, 2011), counters that the BA has the burden of proof on all elements of § 707(b)(1), including establishing

that the Debtor's debts are primarily consumer debts. At the outset of the hearing, the court stated that it would presume for purposes of this matter that the BA bears the burden of proof to show the Debtor's debts are primarily consumer debts.

*The Nature of the Student Loans*

17. "The term 'consumer debt' means debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). The Fourth Circuit Court of Appeals has held that "[a] debt incurred with a profit motive is not incurred 'primarily for a personal, family, or household purpose' and therefore is not a consumer debt." *Lind-Waldock & Co. v. Morehead*, 1 Fed. Appx. 104, 108 (4th Cir. 2001). The Debtor asserts that she incurred the student loans with a "profit motive" to increase her income, and the loans do not constitute consumer debt.

18. In the *Morehead* case, the Fourth Circuit found that debt incurred "while speculating in the futures market" was not a consumer debt. 1 Fed. Appx. at 108. In that opinion, the Fourth Circuit cited its prior decision of *Cypher Chiropractic Center v. Runski (In re Runski)*, in which the court stated that "courts have concluded uniformly that debt incurred for a business venture or with a profit motive does not fall into the category of debt incurred for 'personal, family, or household purposes.'" 102 F.3d 744, 747 (4th Cir. 1996) (citing *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 913 (9th Cir. 1988); *In re Bell*, 65 B.R. 575, 577 (Bankr. E.D. Mich. 1986)).

19. In the earlier *Runski* case, the Fourth Circuit was tasked with determining whether certain medical and office equipment, financed as part of the debtor's purchase of a chiropractic business in her own name, qualified as property intended primarily for personal use and redeemable under 11 U.S.C. § 722. *See* 102 F.3d at 745. The court considers it relevant that the *Runski* case, from which the later *Morehead* case cited the "profit motive" language, dealt with property that the debtor used for the operation of her business. The Debtor's student loan

obligations, incurred as the Debtor sought to improve her personal knowledge and education, appear distinguishable from these prior cases examining the presence of a profit motive. The Debtor argues, though, that individuals who incur debt to fund business ventures have the ultimate goal, like the Debtor, to "bring money home," and the court should analogize the Debtor's student loan debt to entrepreneurial debt.

20.     The BA cites the case of *In re Millikan*, in which the United States Bankruptcy Court for the Southern District of Indiana noted the weaknesses of an analysis based on a search for a profit motive. No. 07-01759-AJM-7, 2007 Bankr. LEXIS 4696 (Bankr. S.D. Ind. Sept. 4, 2007).

> 'Few human activities are entirely innocent of a profit motive.' Even though the use of undergraduate and graduate education may lead to a financially comfortable lifestyle, such education is personal in nature; it resides only within the person who attends the classes and earns the degree. Education is a non transferrable asset that can only be used by the individual, unlike office equipment or leased office space or even a dental practice that can be purchased and transferred.

2007 Bankr. LEXIS 4696, at *13 (internal citation and footnote omitted) (quoting *In re Stewart*, 201 B.R. 996, 1005 (Bankr. N.D. Okla. 1996)). The court finds the *Millikan* analysis persuasive.

21.     The BA also notes that in a recent opinion dealing with similar issues, the United States Bankruptcy Court for the Northern District of Ohio cited the restrictions within Section 262 of the Internal Revenue Code that a taxpayer may not deduct "personal, living, or family expenses." *See In re Teter*, No. 19-11224, 2019 Bankr. LEXIS 3767, at *6 (Bankr. N.D. Oh. Dec. 11, 2019) (quoting 26 U.S.C. § 262). The treasury regulation governing deductibility of educational expenses "provides that educational expenditures in order to meet the minimum educational requirements for employment are generally personal expenditures and are not deductible as ordinary and necessary business expenses." *Id.* (citing 26 CFR 1.162-5). While not

9

binding on this court for the decision at hand, the provisions of the Internal Revenue Code and related treasury regulation are informative to the court's analysis.

22. The court finds that the student loans are consumer debt incurred primarily for a personal, family, or household purpose. The Debtor provided credible testimony that she chose to pursue additional degrees in the healthcare field in order to increase her earning capacity; however, the court cannot find that the Debtor's decision was made with a "profit motive" that would somehow remove the related student loans from the realm of debt incurred primarily for the Debtor's personal, family, or household purposes. The student loans funded additional vocational training that would allow for a higher salary, but the Debtor wanted to increase her income in order to benefit her family so they might "have a better life." The student loans were incurred to ultimately fund the Debtor's household and benefit her family. "Congress did not define 'consumer debt' as a 'debt incurred by an individual having no profit motive,' but rather as a 'debt incurred by an individual for a personal, family or household purpose.'" *In re Stewart*, 201 B.R. 996, 1005 (Bankr. N.D. Okla. 1996).[3]

23. The Debtor's debts are primarily consumer debts, and the Debtor is subject to the provisions of § 707(b)(1). The Debtor's case is presumed an abuse pursuant to § 707(b)(2). Under the circumstances of the Debtor's case, including the substantial dividend that the Debtor's non-student loan creditors would receive in a Chapter 13 case, the court finds that granting a Chapter 7 discharge to the Debtor would be an abuse of the provisions of Chapter 7. The Debtor's case should be dismissed, but the Debtor should be given an opportunity to convert her case to Chapter 13 before the dismissal becomes effective; now therefore,

---

[3] It appears the *Stewart* court misquoted § 101(8) by leaving out the word "primarily" after the word "individual."

It is ORDERED, ADJUDGED and DECREED that the Debtor's case is dismissed effective August 28, 2020 to allow the Debtor an opportunity to convert this case to one under Chapter 13.

END OF DOCUMENT